UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANTHONY ISH,<br><br>       Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>       Respondent. | Case No. 4:21-cv-00325-DCN<br>       4:15-cr-00119-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Petitioner Anthony Ish's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (CR-119, Dkt. 258, CV-325, Dkt. 1)[1] and the Government's response to Ish's motion. CV-325, Dkt. 50.[2]

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court DENIES Ish's motion.

---

[1] Ish supplemented his petition in subsequent filings. *See* Dkts. 11, 14, 15.

[2] In this order, "CR-119" is used when citing to the criminal case record in Case No. 4:15-cr-000119-DCN, and "CV-325" is used when citing to the civil case record in Case No. 4:21-cv-00325-DCN.

## II. BACKGROUND

### A. Factual History

On October 14, 2014, Ish held a birthday party at his grandmother's house in Fort Hall, Idaho. During the party, Ish became confrontational with Darrel Auck, an attendee, due to the Ish's gang affiliation and the color of Auk's bandana. After the dispute over the bandana was supposedly resolved, Ish approached Auck outside of the house, firing four shots, killing him. Witnesses called law enforcement to report the incident. Officers who responded to the scene found blood matching the victim's DNA and spent shell casings from the shooting, but Auck's body could not be located. Testimony from witnesses in jail indicated that Ish bragged he had killed Auck and disposed of his body.

On February 14, 2017, a jury found Ish guilty of one count of Second-Degree Murder under 18 U.S.C. § 1111 and one count of Assault with a Dangerous Weapon under 18 U.S.C. § 113(a)(3). Judge Edward J. Lodge[3] sentenced Ish to life imprisonment and 120 months imprisonment, to run concurrently. CR-119, Dkts. 185, 192. Ish appealed his conviction and sentence to the Ninth Circuit. CR-119, Dkt. 195. The Ninth Circuit affirmed Judge Lodge. *See* CR-119, Dkt. 223.

Ish timely filed his Motion to Vacate, Set Aside or Correct Sentence on August 12, 2021. CV-325, Dkt. 1. Ish supplemented his motion on November 22, 2021, and January

---

[3] Judge Edward J. Lodge presided over this case, including the underlying trial and sentencing. However, due to Judge Lodge taking inactive senior status, the criminal matter was transferred to the undersigned in August of 2020. CR-119, Dkt. 231. This connected civil matter was, then, assigned to the undersigned upon filing.

18, 2022. *See* CV-325, Dkts. 11, 14-15. The Government filed its response in opposition to Ish's motion on February 3, 2023. CV-325, Dkt. 50.

### B. Procedural History

Throughout this case, Ish has filed some 53 motions, notices, letters, and requests with the Court. The Court dealt with many of his initial filings early on. *See* CV-325, Dkt. 20. Reviewing the remaining motions, notices, letters, and requests is unnecessary. Many of Ish's filings are ministerial in nature such as requesting a copy of the docket sheet (*Id*. at Dkts. 19, 27, 44, 56, 57, 65, 66, 67) or copies of already filed motions (*Id*. at Dkts. 17, 28, 52, 53, 54); requesting to know the Judge's name (*Id*. at Dkt. 59); or for an "update" from the Court (*Id*. at Dkt. 35). Other filings were "notices" to the Court of Ish's situation in jail (*Id*. at Dkts. 55, 63) or of his intent to file other documents (*Id*. at Dkts. 33, 38, 51). Ish also filed various motions to take judicial notice. *Id*. at Dkts. 21, 35.

The Court dealt with many of these motions at the time of filing and/or simply by providing the requested relief (e.g., a copy of the docket sheet). That said, some filings remain "pending" even at the present time and must be adjudicated.

Ish's motions to take judicial notice (CV-325, Dkts. 21, 35) are GRANTED. The Court has reviewed the materials Ish has provided and will give his filings the weight it deems appropriate.

Ish's Motion to Order the Government to Respond (*Id*. at Dkt. 46) is DISMISSED as MOOT. The Court set forth the briefing schedule in this case and afforded both sides various extensions.

Ish's Motion to "Hold Mr. Brown in Contempt" (*Id*. at Dkt. 47) is DENIED. The Government filed a Motion for Order Granting Waiver of the Attorney-Client Privilege so that Ish's prior attorney—Jeremy D. Brown—could respond to certain allegations in Ish's Motion. *Id*. at Dkt. 36. The Court Granted the Government's Motion and set a deadline for the submission of Brown's affidavit. *Id*. at Dkt. 37. Thereafter, the Government sought clarification of the Court's order. *Id*. at Dkt. 41. The Court so clarified. *Id*. at Dkt. 43. These matters pushed back the attending deadlines. *See Id.* at Dkt. 43. During this time, however, Ish sent a letter/motion asking the Court to make the Government respond in a timelier fashion and to hold Brown in contempt for not filing his affidavit on time. Dkts. 46, 47. The Government never responded to any of these motions. As noted, the Court had been clarifying its order and setting new deadlines during the original timeframe for Brown's affidavit and the Government's Response. Delays related to prison mail are likely the cause of some of the confusion. Suffice it to say, the Court reset the deadlines, the Government was not late in filing, and neither was Brown. These Motions (Dkt. 46, 47) are DENIED.

Relatedly, as part of its orders throughout this case, the Court has always set forth a time for the Government's response and Ish's reply. *See* Dkts. 6, 20, 25, 31, 34, 43. Ish's response was always due 30-60 days after the Government's response. In its most recent order continuing the Government's response deadline, however, the Court indicated the Government would have until February 3, 2023, to file its Response, but the Court failed to include an actual deadline for Ish's reply. *See* Dkt. 43, at 4.

Ish never replied to his actual § 2255 Motion.

MEMORANDUM DECISION AND ORDER - 4

Seven months after the Government's response, however, Ish filed a motion notifying the Court that he wanted to reply to his motions about contempt and the Government's failure to timely respond. Dkt. 61. Ish also filed a motion notifying the Court that he wanted to respond to Brown's affidavit. Dkt. 62. As part of this final motion, Ish asked that he be allowed to reply to the Government's Response to his § 2255 Motion.

First, the Court does not need replies to Ish's motions for contempt and failure to respond. As noted, neither the Government nor Brown were untimely in their filings. Second, Ish's request to reply to the Government's response came six months too late. While it is true that the Court had not outlined an exact deadline for Ish's response in its final order on scheduling, it had in all prior orders. Dkt. 6 (setting 14-day deadline for Ish's reply); Dkt. 20 (setting 28-day deadline for Ish's reply); Dkt. 34 (setting 60-day deadline for Ish's reply). That Ish waited seven and a half months to request an opportunity to reply is unreasonable. Furthermore, Ish has filed hundreds of pages of materials in this case. The Court has sufficient information before it to make an informed decision on the merits of Ish's claim. A reply brief would not aid the Court. In sum, Ish's motions to file more documents (Dkts. 61, 62) are DENIED.

### III. LEGAL STANDARD

Title 28 U.S.C. § 2255 provides four grounds under which a federal court may grant relief to a prisoner who challenges the imposition or length of his incarceration: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence

was in excess of the maximum authorized by law;" or (4) "that the sentence is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

Relief under § 2255 is afforded "[i]f the court finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). Furthermore, "a district court must grant a hearing to determine the validity of a petition brought under that section '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Baylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (emphasis in original) (quoting § 2255). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011).

A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062–63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). In a § 2255 motion, conclusory statements are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980); *see also James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

## IV. ANALYSIS

Ish raises fifteen claims in support of his motion. The court will analyze each of

these claims separately, grouped into the following four categories: a) trial counsel errors; b) trial court errors; c) prosecution errors; and d) post-trial error.

### A. Trial Counsel Errors

Ish claims ineffective assistance of counsel via § 2255. As the United States Supreme Court has noted, "[a] court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).[4]

In order to successfully claim ineffective assistance of counsel, Ish must satisfy the two-part *Strickland* test. Ish must show that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000) (citing *Strickland*, 466 U.S. at 687).

To satisfy the first prong related to deficiency of counsel, "a defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 363 (*See also*, *Strickland*, 466 U.S. at 688). Petitioners must show "gross incompetence" on the part of their attorneys. *Kimmelman v. Morrison*, 477 U.S. 365, 366–67 (1986). There is a strong presumption that legal counsel's conduct falls within the range of sound trial strategy. *Strickland*, 466 U.S. at 669.

---

[4] In applying that presumption, a court must make an effort "to eliminate the distorting effects of hindsight" and instead "to reconstruct the circumstances of counsel's challenged conduct" and "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

MEMORANDUM DECISION AND ORDER - 7

To satisfy the second prong, the petitioner must be prejudiced by their counsel's errors. A petitioner must show "that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kimmelman*, 477 U.S. at 375.

Ish alleges four instances of ineffective assistance of counsel. These include: (1) failure to subpoena witnesses; (2) alleged suppression of dog handler Lynn Porter's report; (3) failure to expedite a decision on a Motion to Compel and challenge its denial; and (4) failure to object to testimony. The Court will analyze separately each of Ish's claims regarding the efficacy of his trial counsel.

1. *Failure to Subpoena Witnesses*

Ish claims that his counsel failed to subpoena witnesses after "counsel was clearly told by his client that certain people contained vital information." CV-325, Dkt. 1, at 4.

A defendant "must make specific allegations about the content of the witness's potential testimony in order to show how the failure to present that evidence prejudiced [him]" when claiming ineffective assistance of counsel. *U.S. v. Dalton*, 785 F. Supp. 126, at 128 (D. Mont. 1990).

Ish's argument does not establish deficiency on the part of Brown, who from the Court's view did his part to locate and bring witnesses to trial. *See* CR-119, Dkt. 45. Furthermore, Ish fails to make any specific, factual allegations regarding the content of these potential witnesses' testimony to establish that Brown's failure to issue subpoenas to compel these witnesses to testify prejudiced him at trial. Therefore, neither of the

MEMORANDUM DECISION AND ORDER - 8

*Strickland* prongs have been met, failing to demonstrate ineffective assistance of counsel as to this claim.

2. *Alleged Suppression of Lynn Porter's Report*

Ish alleges that Brown suppressed a report prepared by Lynn Porter, a dog handler, who was purportedly involved in the search for Auck's body. CV-325, Dkt. 15, at 8. Ish asserts that he was provided with Porter's qualifications but was "never given her cover sheet or report." *Id*.

If a report prepared by Porter exists, the Court is unaware of it. Ish's allegation does little more than speculate about the existence of this report and Brown's purported role in its suppression or concealment. Beyond the lack of specific factual allegations to support this claim, Ish fails to establish deficiency on the part of Brown and how this alleged deficiency prejudiced him. Accordingly, Ish's claim fails to satisfy either *Strickland* prong and thus does not establish deficiency of counsel as it relates to this allegation.

3. *Motion to Compel*

Ish alleges that Brown "never followed through by way of pretrial motion to have Movant's judge enter a judgment until 11 days before Movant's trial began." *Id*. at 22. Additionally, Ish asserts that Brown should have challenged the denial of Ish's Motion to Compel. For this claim to succeed, Ish must allege facts showing that Brown's behavior regarding this motion to compel "fell below prevailing professional norms" and demonstrate the result of the proceeding would have been different "but for counsel's professional errors." *U.S. v. McMullen*, 98 F.3d 1155, 1158 (9th Cir. 1996).

Here, Ish fails to explain how Brown's actions amount to deficiency, or how expediting the motion and challenging its subsequent denial would have resulted in a different outcome at Ish's trial. The strong presumption in favor of legal counsel acting within the scope of reasonable legal assistance weighs against Ish's argument. Strategic choices about pre-trial filings (and trial) are "virtually unchallengeable" because it is "too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence . . ." *Strickland*, 466 U.S. at 689–90. Here, Ish has not provided any specific evidence, facts, or argument that would cause the Court to call Brown's performance into question. As a result, neither *Strickland* prong is met and Ish's claim fails to establish any deficiency as to this claim.

### 4. *Failure to Object to Testimony*

Finally, Ish asserts Brown's representation was deficient, arguing he "should've objected to [Jimmy Honena's] testimony concerning evidence . . . because he no longer worked for Fort Hall Police Department" at the time of the joint investigation with the FBI in this case. *Id*. Ish alleges that Honena, a former Fort Hall police officer, mishandled DNA evidence related to his case and alludes to this being the reason Honena was no longer employed with the Fort Hall Police Department. Additionally, Ish speculates that had Brown questioned Honena "as to why he no longer worked for Fort Hall Police Department" that the trial would have ended in a not guilty verdict. *Id*. at 21.

The Court finds the logic in *Casas v. United States* persuasive. 2013 WL 12222470 (D. Haw. Nov. 25, 2013). In that case, the district court stated that the "[f]ailure to raise the Petitioner's objections . . . does not constitute deficient performance or show prejudice, [if]

there is no legal basis for these claims." *Id*. at *10. Without any supporting evidence, Ish speculates that the outcome of his trial would have been different had Brown objected to Honena's testimony. But Ish's claim has no legal basis and fails to show that Brown acted deficiently. Simply put, there is no persuasive reason to assume that Brown's failure to object to Honena's testimony would have materially affected the outcome at trial. Ish's unsupported supposition is insufficient to satisfy either prong of the *Strickland* test. Accordingly, the Court finds that Ish's claim fails to establish deficiency of counsel in this regard as well.

### B.  Trial Court Errors

Ish raises several claims regarding errors by the Court under 28 U.S.C. § 2255. The Court will analyze each claim grouped under the categories of: (1) venue error; (2) denial of motion to compel, (3) sufficiency of evidence; (4) search and seizure error; (5) government agents at the table; (6) jury manslaughter instruction; and (7) sentencing error.

### 1.  *Venue Error*

Ish raises inappropriate venue as an issue in his trial. However, this claim does not convince the Court. The shooting of Darrel Auck occurred on the Fort Hall Indian Reservation in the State of Idaho. As the Government correctly points out, under 18 U.S.C. § 1153, venue was proper in the District of Idaho and thus this Court had jurisdiction. The Court dismisses this argument as legally improper.

### 2.  *Denial of Motion to Compel*

Ish claims that the Court abused its discretion by denying his Motion to Compel. In his present Motion, Ish contends that during pretrial proceedings, he requested evidence

MEMORANDUM DECISION AND ORDER - 11

from the prosecution which was rebuffed. CV-325, Dkt. 1, at 4. He followed up that request with a formal Motion to Compel (CR-119, Dkt. 43) which Judge Lodge denied (*Id*. at Dkt. 117). Ish speculates that had he received the evidence sought by filing his Motion to Compel, it would have resulted in a different outcome at trial.

As a threshold matter, Ish did not raise the denial of his Motion to Compel on appeal. Accordingly, he may not do so now. *See Bousley v. United States,* 523 U.S. 614, 622 (1998) (explaining that, "wh[en] a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in Habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent" (cleaned up)). Here, Ish cannot so demonstrate.

Nevertheless, even looking at the substance of Ish's argument, he has not convinced the Court. Ish fails to state any specific factual allegations as to how this denial was an abuse of Judge Lodge's discretion or how this evidence would have resulted in a different outcome at trial had it been turned over. Conclusory allegations are not sufficient to convince the Court that Ish should be granted relief. Accordingly, Ish fails to establish that the Court abused its discretion in denying his Motion to Compel.

### 3. *Sufficiency of Evidence*

Ish asserts that there was insufficient evidence to sustain a conviction under 18 U.S.C. § 1111. In the Ninth Circuit, "the insufficiency of evidence is not a cognizable attack under section 2255." *U.S. v. Collins*, 1999 WL 179809 *12 (N.D. Cal. Mar. 25, 1999). *See Brule v. United States*, 240 F.2d 589 (9th Cir. 1957) (finding that § 2255 cannot be used to challenge sufficiency of evidence to convict); *United States v. Johnson*, 988 F.2d

941, 945 (9th Cir. 1993) (challenge to sufficiency of the evidence is procedurally defaulted if it is not raised on direct appeal).

Had Ish wished to challenge the sufficiency of evidence in his conviction, he should have brought it up on appeal. Because Ish failed to do so, he is procedurally barred from raising insufficiency of evidence and thus the Court is unable to address this claim.

4. *Search and Seizure Issue*

Ish claims government agents engaged in an illegal search and seizure in this case and the failure of the Court to provide a *Franks* hearing on those issues was deficient.

If a defendant makes a "substantial preliminary showing" that an allegedly false statement was made "knowingly and intentionally or with reckless disregard for the truth" in an affidavit for a search warrant, and that this false statement "was necessary to the finding of probable cause", the Fourth Amendment requires that a hearing be held at the request of the defendant. *Franks v. Delaware*, 438 U.S. 154, 155 (1978).

The Court, however, cannot address even this threshold question because Ish already raised this argument on appeal and lost. The Ninth Circuit has clearly stated that "when a matter has been decided adversely on appeal from a conviction, it cannot be litigated again on a 2255 motion." *Odom v. U.S.*, 455 F.2d 159, 160 (9th Cir. 1972) (cleaned up).

In his appeal to the Ninth Circuit, Ish challenged Judge Lodge's denial of his motion to suppress evidence from the three warrantless searches conducted by Fort Hall Police officers. In fact, this was Ish's primary argument on appeal. The Ninth Circuit affirmed this Court's decision, holding that two of the searches were justified and the third search

MEMORANDUM DECISION AND ORDER - 13

was conducted with consent. *See* CR-119, Dkt. 223, at 2–4. Accordingly, this claim is dismissed.

   5. *Government Agents at Table*

Ish challenges the fact that two government agents were seated at the Government's table during trial.

Under the Federal Rules of Criminal Procedure, at a party's request or at its own discretion, the court may order a witness to leave the courtroom so they do not hear another witnesses' testimony. Fed. R. Crim. P. 615(a). Ish's challenges the presence of two government agents seated with the prosecution during his trial, one of whom, Mr. Tendoy, was also serving as a witness. CV-325, Dkt. 14, at 15.

During trial, the government received permission from the Court to have two agents at the table assisting the prosecution, which included a representative from the FBI and a representative of the Fort Hall Police Department—Tendoy. Ish contends that "if . . . Tendoy was excluded and subjected to being just a witness his testimony would've been different." *Id*. at 16. This claim by Ish likely arises from Tendoy's apparent "bluff[ing]" of uncooperative witnesses.[5] CV-325, Dkt. 50, at 12. *See also* CR-119, Dkt. 119.

Here, the Court finds that there was no abuse of discretion in allowing two agents, including Tendoy, at the table. Ninth Circuit precedent allows for multiple agents representing a party. *See Breneman v. Kennecott Corp.*, 799 F.2d 470, 474 (9th Cir. 1986)

---

[5] Ish claims that Detective Tendoy threatened to report uncooperative witnesses. However, none of these witnesses testified at trial. Thus, Judge Lodge determined there was no harm in allowing both agents to sit at the table.

(allowing two representatives of a party to remain in trial, finding that this was not in violation of Rule 615). Additionally, Ish has failed to state allegations showing that had Tendoy been excluded, the outcome of his trial would have been different. Fatal to Ish's argument is the fact that none of the uncooperative witnesses were testifying in court, as noted by the government. *See* CV-325, Dkt. 15, at 12. Ish's claim does little more than speculate and, accordingly, cannot carry his burden. This claim is dismissed.

6. *Jury Manslaughter Instruction*

Ish next claims that the district court "failed to instruct the jury of a lesser included offense" contending the jury should have been instructed in manslaughter rather than murder. CV-325, Dkt. 1, at 4. Ish argues this was an egregious application of the law and deprived him of constitutional rights. The Court disagrees.

At trial, both the prosecution and the defense proposed the second-degree murder instruction. And such was appropriate. To instruct the jury regarding manslaughter in this case, evidence of a "sudden quarrel" prior to the shooting was necessary or evidence that Ish shoot Auck in the "heat of passion." 18 U.S.C. § 1112. Here, the facts simply did not support an instruction of manslaughter as the shooting was clearly deliberate and premeditated. *See* 18 U.S.C. § 1111. Ish's argument here is unavailing.

7. *Sentencing Issue*

Ish's final claim concerning the Court revolves around an error that occurred during his sentencing. At his original sentencing on September 7, 2017, the Court sentenced Ish to life in prison for Count One. Shortly thereafter, the Court realized it had failed to sentence Ish for Count Two and held a separate hearing to remedy the oversight. At that

MEMORANDUM DECISION AND ORDER - 15

hearing on October 4, 2017, the Court sentenced Ish to an additional 120 months. Ish claims that the Court sentenced him under the wrong guidelines and that by holding a second sentencing to address Count Two, it violated Rule 35, which allows courts to correct a sentence resulting from error within fourteen days. CV-325, Dkt. 11, at 4. *See* Fed. R. Crim. P. 35(a).

Here, Ish's argument does little to convince the Court. During the second sentencing on October 4, 2017, the Court specifically addressed this issue clarifying that it was not correcting an erroneous sentence, but rather was simply holding a separate sentencing for Count Two. *See* CR-119, Dkt. 209, at 35–36. Ish's claim fails to establish grounds on which the Court may grant him relief.

## C. Prosecution Errors

Ish raises two alleged prosecutorial errors under section 2255: (1) unlawful detainment when he was taken into federal custody; and (2) that his gang affiliation was improperly raised at trial. The Court will analyze each of these purported errors separately.

### 1. *Federal Custody*

Ish alleges that on April 16, 2015, he was unlawfully detained while being transported from Fort Hall to the Federal Courthouse in Pocatello, Idaho, to face federal charges. Ish claims that "not once did Fort Hall Police Department or U.S. Marshals notify [him] he was being detained for a federal arrest warrant" and that he was never read his rights. CV-325, Dkt. 14, at 20. Additionally, Ish alleges that his arrest warrant and other documents were falsified by the government.

Ish's allegations as to falsified documents are speculative, and his claim of unlawful detainment is not convincing. The Court has reviewed both Ish's criminal complaint (CR-119, Dkt. 1) and the associated arrest warrant (CR-119, Dkt. 2). Everything in these documents appears to be in order. Each is in the proper form, and each was signed by a magistrate judge. There is not a sufficient legal or factual basis for this claim and it will be dismissed.

   2. *Ish's Gang Affiliation*

Ish claims that the Government improperly raised his gang affiliation during trial, and that it should have filed a motion prior to trial under Rule 404(b) of the Federal Rules of Evidence.

This argument, that Rule 404(b) was violated, was never raised on appeal nor were there any 404(b) objections to the evidence at trial. As already explained, a Section 2255 Motion is not a substitute for appeal. Thus, Ish waived this argument by not raising it on appeal. *See Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). But even if the Court were to consider the merits of Ish's arguments, he would still not prevail.

Federal Rule of Evidence 404(b) outlines that certain character traits may be admitted at trial as evidence to show proof of motive. Ish's gang affiliation came up during the testimony of Angel Teton, in which he stated that the dispute over the color of Auck's bandana was "gang related" due to Ish being a member of the gang the "Bloods" and his dislike of the color blue, representing the "Crips," a rival gang. CR-119, Dkt. 202, at 95. The Court notes that Ish did not object during trial to the commentary regarding Ish's gang affiliation and actually questioned Teton further, eliciting responses about how Ish had

renounced his gang membership and was no longer involved in that life. A similar colloquy took place with another witness at trial—Alyssa Timbana. Again, Ish did not object to the testimony. Finally, during closing argument, Ish's counsel relied on some of the testimony about gang affiliation to support his argument that Ish was no longer involved with gangs and, as such, the Government's theory that the shooting was the result of gang colors was implausible.

The Court does not know why the Government did not file a notice under Rule 404(b) prior to trial in this case.[6] Nevertheless, when the evidence was first raised, Ish did not object. And both the Supreme Court and the Ninth Circuit have ruled that evidence of gang affiliation is admissible when it is relevant to a material issue in the case. *See, e.g., United States v. Abel,* 469 U.S. 45, 49 (1984) (admissible to impeach for bias); *United States v. Easter*, 66 F.3d 1018, 1021 (9th Cir. 1995) (relevant on the issue of identity). Most notably, the Ninth Circuit has held that gang-affiliation may be admissible to show motive. *United States v. Santiago,* 46 F.3d 885 (9th Cir.1995).

Here, the Government's theory of the case was that Ish killed Auck because Auck was wearing the colors of a rival gang. Evidence of gang affiliation was, therefore, extremely relevant to motive (and frankly, the entire story of the case). Multiple eyewitnesses discussed this evidence and confirmed gang-affiliation played a role in the case.

---

[6] The Court is not implying the Government was *required* to. Being a member of a gang is not (typically) a crime in and of itself. To be sure, many Courts have found that gang affiliation or membership can be prejudicial and will exclude such evidence absent applicable probative reasons. The Court's point, however, is that regardless of whether the Government *should* have filed a notice in this case, it makes no difference because both the Government and the Defense used that evidence to further their respective arguments.

Both the prosecution and defense raised Ish's gang affiliation at trial to support their respective arguments without issue or objection. The Court sees no reason why Ish's gang affiliation should not have been raised. He has provided no evidence or argument to support any different conclusion. Therefore, besides being procedurally barred, this claim fails on the merits.

### D. Post-Trial Evidentiary Error

Ish's final argument revolves around the presentation of DNA evidence at his trial. The DNA evidence at issue was a sample of blood found at the scene of the shooting that matched DNA taken from personal items belonging to Auck. Ish alleges that during his trial, an expert witness for the government, Jeremy Fletcher, "deviated from recommended language" that should be used when discussing the likelihood ratio of a match in DNA analysis. Dkt. 14, at 5. This is confirmed by a letter from the FBI to the U.S. Attorney's Office. *See* CV-325, Dkt. 50-2, at 1–4. In sum, this letter summarizes instances during trial in which the witnesses used language other than that recommended for FBI forensic examiners. *Id*. The FBI brought this information to the Government's attention "out of an abundance of caution." *Id*. at 3.

As pointed out by the Government, the difference in language between what was said by Fletcher during trial and what was recommended by the FBI is highly technical, subtle, and does little to change the meaning of the statements corrected by the FBI in any substantive way. The Court has reviewed all documents and does not find there was any material difference in the testimony and potential outcome. And Ish has not presented any evidence. It seems he is simply objecting based on the letter itself (as opposed to having

any concrete evidence). But as noted, the letter does not say that the witness lied, misrepresented, or anything of that nature. It simply says the witness used different language than what is recommended. But Ish has failed to show that had the recommended language been used, a different outcome would have resulted from his trial. Accordingly, this claim fails to convince the Court that relief is necessary.

## V. CERTIFICATE OF APPEALABILITY

A defendant cannot appeal a final order on a § 2255 motion unless the district court or court of appeals issue a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1) (providing that appeal cannot proceed unless "circuit justice or judge issues a certificate of appealability"); *U.S. v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997) (interpreting "circuit justice or judge" to include district judges). The court should issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires the defendant to show that "a reasonable jurist would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

To promote efficiency, the district court is required to issue or deny a COA in the same order denying the defendant's § 2255 motion. *See* Rule 11(a) of the Rules Governing § 2255 Proceedings. If the district court denies the COA, the court should state the reason for its decision. *Aznar*, 116 F.3d at 1270. The defendant cannot appeal the denial of the COA but can file a notice of appeal and request a COA from the court of appeals pursuant to Federal Rule of Appellate Procedure 22. *See* Rule 11(a) of the Rules Governing § 2255

Proceedings. Upon so doing, the district court forwards to the court of appeals the defendant's case file, final order, and notice of appeal. *See Asrar*, 116 F.3d at 1270.

In this case, the Court denies the COA. As explained in the preceding sections, Ish is procedurally barred from raising each of his claims in this forum, or his claims lack merit. No reasonable jurist would disagree with this assessment. Therefore, should Ish wish to appeal, he must timely file a notice of appeal with this Court and request a COA from the Ninth Circuit.

## VI. CONCLUSION

For all the reasons stated above, the Court finds no reason to vacate or remand Ish's conviction or sentence. Furthermore, the Court finds it unnecessary to conduct an evidentiary hearing on the same. Thus, the motion is DENIED.

## VII. ORDER

**IT IS HEREBY ORDERED:**

1. Ish's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Dkt.1); CR–150 (Dkt. 111) is **DENIED**. The Clerk of the Court is directed to file this Order in both the criminal and civil case.

2. The Court finds there is no need for an evidentiary hearing.

3. No certificate of appealability shall issue. Ish is advised that he still may request a certificate of appealability from the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Ninth Circuit Rule 22-1. To do so, he must file a timely notice of appeal.

4. If Ish files a timely notice of appeal, and not until such time, the Clerk of the Court shall forward a copy of the notice of appeal, together with this Order, to the Ninth Circuit Court of Appeals.

5. Ish's remaining motions are adjudicated as follows: Dkts. 21, 35, 53 are GRANTED; Dkts. 46, 47, 51, 61, and 62 are DENIED.

DATED: September 4, 2024

David C. Nye
Chief U.S. District Court Judge